# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **ADVANCE AMERICA, CASH ADVANCE CENTERS OF GEORGIA, INC.,** | |
| **Petitioner,** | |
| **v.** | **1:04-cv-2765-WSD** |
| **TAHISHA N. KING and JAMES E. STRONG,** | |
| **Respondents.** | |

## ORDER

This matter is before the Court on Respondents' Motion to Dismiss for Lack of Subject Matter Jurisdiction [2].

## I.    BACKGROUND

This case arises out of loan transactions between Petitioner Advance America, Cash Advance Centers of Georgia, Inc. ("Petitioner") and Respondents Tahisha King and James Strong (collectively, "Respondents") in late 2003 and early 2004.  Petitioner is a Delaware corporation with its principal place of business in South Carolina.  (See Verified Petition for Declaratory Judgment, Order Directing Arbitration and Stay of Judicial Proceedings [1] ("Petition") ¶ 1.)  It serves as the

fiscal agent of and loan marketer and servicer for BankWest, Inc. ("BankWest"), a South Dakota state-chartered bank insured by the Federal Deposit Insurance Corporation ("FDIC").  (Petition ¶ 2.)  Respondents are Georgia residents.  (Id. at ¶¶ 4-5.)  The loans in question are typical "payday" loans:  small, short-term, high-interest loans in amounts under $500.  (Id. at Ex. A., ¶¶ 31-76.)[1]  Each of the Promissory Notes for the respective loans includes an Arbitration Provision, which provides that all claims and disputes with respect to the loan must be individually resolved through binding arbitration.  (Id. at Ex. B.)

On August 6, 2004, Respondents filed an action in the State Court of Cobb County, Georgia, alleging the payday loan transactions violated Georgia statutory and common law (the "State-Court Action").  On behalf of themselves and all recipients of alleged payday loans from Petitioner for the last five (5) years, Respondents assert claims against Petitioner under various Georgia statutes, including the Georgia Racketeer Influenced and Corrupt Organizations Act,

---

[1]  For a thorough discussion of payday lending and the legislative history in Georgia surrounding it, see the Eleventh Circuit's opinion in BankWest, Inc. v. Baker, 411 F.3d 1289, 1292-97 (11th Cir. 2005), *vacated, reh'g en banc granted,* Bankwest, Inc. v. Baker, No. 04-12420, --- F.3d ----, 2005 WL 3534218 (11th Cir. Dec 28, 2005).

O.C.G.A. § 16-4-1 et seq. ("Georgia RICO"), as well as common-law claims for

conversion and conspiracy.  Respondents in their Complaint expressly disavowed

any intention to assert federal-law claims in the State-Court Action:

"[Respondents] do not assert in this action any claims under federal law and

specifically and without limitation do not assert any claims under [Section 27 of the

Federal Deposit Insurance Act ("FDIA")]."  (King, et al. v. Advance America

Leasing Servs., Inc., et al., 1:04-cv-02618-WSD (N.D. Ga.), [1].)  They did not

name BankWest or any national or state-chartered, FDIC-insured bank as a

defendant in that action.[2]

On September 10, 2004, pursuant to the Arbitration Provision, Petitioner

served a Notice of Intent to Arbitrate on counsel for Respondents, stating that the

claims asserted by Respondents in the State-Court Action are subject to mandatory

arbitration.  (Petition ¶ 45, Exs. D, E.)  On September 17, 2004, counsel for

Respondents rejected the Notice and advised Petitioner that they intended to move

---

[2]  Respondents named as defendants in the State-Court Action several of
Petitioner's affiliated entities, including Advance America, Cash Advance Centers,
Inc., Advance America Leasing Services, Inc. and Advance America Servicing of
Georgia, Inc., as well as William M. Webster, IV, Chief Executive Officer of
Advance America, Cash Advance Centers, Inc.  These defendants are not included
as petitioners in the instant case.

forward with the State-Court Action.  (Id. at ¶ 46, Exs. F, G.)  This prompted two

actions by Petitioner.  First, Petitioner and the related persons and entities named as

defendants in the State-Court Action removed the case to this Court.  (See King,

1:04-cv-02618-WSD, [1].)  Second, Petitioner commenced an independent cause

of action in this Court by filing the Petition.

      In both actions Petitioner seeks the same remedy -- the compelled arbitration

of the purely state-law claims that have been asserted in the State-Court Action.

Petitioner exercised two procedural devices to have their request for arbitration

decided by this Court, rather than the state court.  It removed the State-Court

Action, arguing that Section 27 of the FDIA completely preempts the State-Court

Action claims and therefore supports the exercise of subject-matter jurisdiction by

this Court, and subsequently moved to stay and compel arbitration of the claims

asserted in that case.  (King, 1:04-cv-02618-WSD, [1, 28].)  Petitioner also filed this

declaratory judgment action against Respondents, arguing that because

Respondents could have asserted a federal Racketeer Influenced and Corrupt

Organizations Act ("federal RICO") claim in the State-Court Action, the prospect

of such a federal claim is a sufficient basis for the Court to exercise jurisdiction.

(Petition ¶ 12.)  Petitioner in this action seeks a declaration that the Arbitration

Provision is enforceable, as well as an order compelling arbitration of the state-law claims asserted in the State-Court Action and enjoining that case. (Id. at ¶¶ 47-68.)

The State-Court Action and this declaratory judgment action have proceeded along parallel tracks in this Court.  On September 17, 2004, Respondents moved the Court to remand the State-Court Action to the Cobb County State Court, arguing that the grounds for removal jurisdiction set out in the Notice of Removal do not support the exercise of federal jurisdiction.  (See King, 1:04-cv-02618-WSD, [3].)  On September 27, 2004, Respondents moved to dismiss this declaratory judgment action, arguing the Court lacks jurisdiction over Petitioner's claims for declaratory relief and for an order compelling arbitration of the claims asserted in the State-Court Action.  (Resp'ts' Mot. to Dismiss [2].)[3]  On

---

[3] While these motions were pending, the Eleventh Circuit considered the appeal in BankWest, Inc., et al. v. Baker, et al., 1:04-cv-00988-MHS (N.D. Ga.). Because it concluded that the Eleventh Circuit's decision in BankWest likely would shed light on certain of the jurisdictional issues raised in the motions to remand and to dismiss, the Court stayed the State-Court Action, as well as this case, pending a decision by the Eleventh Circuit.  On June 10, 2005, a panel of the Eleventh Circuit affirmed the district court's denial of the preliminary injunction application.  See BankWest, 411 F.3d at 1292-97.  Shortly thereafter, at the Court's request, the parties submitted supplemental memoranda addressing the impact of the Eleventh Circuit's decision in BankWest on the arguments made in support of and in opposition to the motion to remand and the motion to dismiss [15, 16].

December 13, 2005, the Court held that federal jurisdiction did not exist over the

State-Court Action, finding specifically that the doctrine of complete preemption

did not apply, and granted Respondents' motion to remand the State-Court Action

to the Cobb County State Court.  (See King, 1:04-cv-02618-WSD, [31].)[4]

Respondents' motion to dismiss for lack of jurisdiction is now before the Court for

decision.

The question before the Court is whether the possibility that Respondents

could have asserted a federal RICO claim in the State-Court Action is sufficient for

the Court to exercise jurisdiction over a declaratory judgment action in which

Petitioner seeks coercive relief regarding the state-law claims asserted in the State-

Court Action, rather than declaratory relief regarding an unasserted, and at most

potential, federal RICO claim.[5]  Petitioner relies on Household Bank v. JFS Group,

320 F.3d 1249 (11th Cir. 2003), to support its arguments in favor of the exercise of

---

[4]  Because the Court determined that it lacked removal jurisdiction in the
State-Court Action, it did not decide the motion to stay and compel arbitration filed
in that case.  The motion to stay and compel arbitration presumably is now before
the Cobb County State Court for determination.

[5]  The Court acknowledges Petitioner purports to seek declaratory relief
regarding whether any claims that "could be asserted" against it, including
Petitioner's potential federal RICO claim, would be subject to arbitration if ever
asserted.  (Petition ¶ 54.)

federal jurisdiction.  The question is whether <u>Household Bank</u> should be extended to allow the Court's limited jurisdiction to be exercised here.

## II.     DISCUSSION

Federal courts are courts of limited jurisdiction, and a federal court must take care to ensure that it has jurisdiction for all cases that come before it.  <u>Rembert v. Apfel</u>, 213 F.3d 1331, 1333-34 (11th Cir. 2000).  "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises."  <u>Smith v. GTE Corp.</u>, 236 F.3d 1292, 1299 (11th Cir. 2001).  Where, as here, subject-matter jurisdiction is challenged by a Rule 12(b)(1) motion, the court must evaluate whether the plaintiff has alleged subject-matter jurisdiction sufficiently.  <u>Garcia v. Copenhaver, Bell & Assocs.</u>, 104 F.3d 1256, 1261 (11th Cir. 1997).  The allegations in the complaint are taken as true for the purposes of the motion.  <u>Id.</u>

### A.     Jurisdiction Under the Declaratory Judgment Act

Petitioner asserts a claim for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) ("DJA"), and for an order compelling

arbitration and enjoining the state-law claims asserted in the State-Court Action

pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA").  It is settled

that neither the DJA nor the FAA confers jurisdiction.  Household Bank, 320 F.3d

at 1253.  A plaintiff asserting claims under these statutes must demonstrate an

independent source of federal subject-matter jurisdiction, such as diversity or

federal-question jurisdiction.  Id.; see also Short v. Allstate Credit Bureau, 370 F.

Supp. 2d 1173, 1182 (M.D. Ala. 2005) ("If there is an underlying ground for federal

court jurisdiction, the [DJA] allows parties to precipitate suits that otherwise might

need to wait for the declaratory relief defendant to bring a coercive action.") (citing

Gulf States Paper Corp. v. Ingram, 811 F.2d 1464, 1467 (11th Cir. 1987)) (internal

punctuation omitted).[6]  It is undisputed that the requirements for diversity

jurisdiction are not satisfied here.  Instead, Petitioner argues that the rationale set

out in the Eleventh Circuit's decision in Household Bank requires the exercise of

_____

[6] Petitioner does not argue that there is an independent source of jurisdiction
for its claims under the FAA, appearing instead to contend that its FAA claims are
before the Court on supplemental jurisdiction.  (See Pet'r's Opp'n to Mot. to
Dismiss [3] at 14-15.)  Petitioner's FAA claims are addressed further in Section
II(B), infra.

federal jurisdiction here.[7]

_____

    [7] In its supplemental briefing addressing <u>BankWest</u>, Petitioner raises two additional theories of federal question jurisdiction: (1) complete preemption under Section 27 of the FDIA; and (2) the "substantial questions of federal law" test discussed in <u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.</u>, --- U.S. ---, 125 S. Ct. 2363, 2366-67 (2005) (addressing a narrow category of federal "arising under" jurisdiction where federal-question jurisdiction "will lie over state-law claims that implicate significant federal issues . . . and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."). (<u>See</u> Pet'r's Supplemental Opp'n to Mot. to Dismiss [24] at 2-5, 5 n.3).  These grounds for federal jurisdiction were not raised in Petitioner's response to Respondents' Motion to Dismiss and were argued for the first time in Petitioner's supplemental briefing, in which the parties were directed to address only the impact, if any, of the <u>BankWest</u> panel decision on their arguments concerning jurisdiction.  As a result, these arguments are not properly before the Court and will not be considered.  Even if they were, they are without merit.  For the reasons set out in the order issued today in <u>Community State Bank, et al. v. Strong, et al.</u>, 1:04-cv-02609-WSD (N.D. Ga.), Section 27 does not completely preempt the claims asserted by Respondents in the State-Court Action.  (<u>See</u> <u>Community State Bank</u>, 1:04-cv-02609-WSD, [26].)  In addition, the issue of ordinary preemption under Section 27 does not constitute a "significant federal issue" justifying resort to "the experience, solicitude, and hope of uniformity that a federal forum offers" under <u>Grable & Sons</u>, since ordinary preemption is routinely applied by state courts and federal courts alike.  <u>See</u> <u>Geddes v. Am. Airlines, Inc.</u>, 321 F.3d 1349, 1357 (11th Cir. 2003) ("We agree . . . that '[s]tate courts are competent to determine whether state law has been preempted by federal law and they must be permitted to perform that function in cases brought before them, absent a Congressional intent to the contrary.'") (citing <u>Ry. Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co.</u>, 858 F.2d 936, 942 (3d Cir. 1988)).   This is especially true here, where Petitioner expressly requests that the claims and defenses of the parties (including ordinary preemption) be submitted to an arbitrator, not a federal court, for decision.

In <u>Household Bank</u>, recipients of tax refund anticipation loans filed two class actions in the United States District Court for the Northern District of Illinois against the bank which provided the loans (the "Bank"), alleging that the loans violated the federal Truth in Lending Act, the National Bank Act and the federal RICO Act, as well as Illinois statutory and common law.  320 F.3d at 1251-52. The Illinois class actions settled, but a group of class members in Alabama (the "Borrowers") opted out of the settlements to file their own representative actions against the Bank.  <u>Id.</u>  Indeed, in August 2000, counsel for the Borrowers executed an affidavit in which he threatened:  "if adequate and fair settlements are not able to be obtained, I intend to pursue litigation through the Courts here in Alabama which are favorable to plaintiffs *with valid causes of action such as these*," referring to the claims asserted in the Illinois class actions.  <u>Id.</u> (emphasis added in opinion). One month later, in response to these threats of litigation, the Bank filed a declaratory judgment action in the United States District Court for the Middle District of Alabama, seeking a declaration regarding the enforceability of the

arbitration provisions in the tax refund anticipation loan agreements between the parties.  Id.[8]

The Borrowers moved to dismiss the declaratory judgment action for lack of jurisdiction, arguing that the Borrowers' potential federal claims were insufficient to confer federal-question jurisdiction.  The district court agreed, holding that federal-question jurisdiction exists in a declaratory judgment action only where the anticipated coercive action would "of necessity" arise under federal law, i.e., where the actual controversy between the parties presents a federal question within the district court's exclusive jurisdiction, such as a dispute regarding a copyright.  See id. at 1254.  Because the actual controversy in that case involved both federal and state-law claims, permitting a declaratory judgment plaintiff to seek relief in federal court "based on the fact that the declaratory judgment defendant may assert a federal claim, even though he may also limit his coercive action to only state claims," was, according to the court, "tantamount to allowing a declaratory

---

[8]  H & R Block, the entity which provided tax preparation services for the Borrowers, joined the Bank's declaratory judgment action as a plaintiff.  See Household Bank, 320 F.3d at 1252.

judgment plaintiff to force the other party to litigate a claim that he may have no intention of pursuing."  Id.

The Eleventh Circuit reversed, concluding that "a federal district court has subject-matter jurisdiction over a declaratory judgment action if . . . a plaintiff's well-pleaded complaint alleges facts demonstrating the defendant could file a coercive action arising under federal law."  Id. at 1259.  The court rejected the district court's distinction between actual controversies arising under the district court's exclusive jurisdiction and those where the declaratory judgment defendant could file a coercive action under state or federal law.  Id.  It reasoned that the DJA did not make this distinction, and so "[c]oncerns that permitting a party to seek a declaration under the DJA where the defendant *could* file a coercive action under state or federal law eviscerates the principle that plaintiff is the master of his or her claim, must be addressed to the legislative branch of our Government."  Id. at 1258.  The court noted that seven other circuits have concluded that subject-matter jurisdiction is present where the facts alleged in a declaratory judgment plaintiff's well-pleaded complaint demonstrate that the declaratory judgment defendant could allege a coercive claim under federal law.  Id. at 1258-59.

Petitioner argues the Court has jurisdiction over its claims for declaratory relief under Household Bank because, by referring to the allegations in Respondents' complaint in the State-Court Action, Petitioner has demonstrated that Respondents could assert a non-frivolous federal RICO claim against it. (Petition ¶ 10; Pet'r's Opp'n to Mot. to Dismiss at 8-14.)  Having reviewed the arguments of the parties, as well as the allegations of the Petition, the Court concludes that this argument is without merit and that the Court's limited jurisdiction does not extend to Petitioner's declaratory judgment action and its requested relief requiring arbitration of the purely state-law claims asserted in the State-Court Action.  Although Respondents' potential federal RICO claim is non-frivolous, and is undoubtedly a claim arising under federal law, Petitioner fails to demonstrate an actual controversy with respect to this claim.

A party asserting a claim under the DJA must demonstrate that the claim presents an "actual controversy within the jurisdiction of the Court."  See 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); see also Cardinal Chem. Co.

v. Morton Int'l, Inc., 508 U.S. 83, 95 (1993) ("[A] party seeking a declaratory

judgment has the burden of establishing the existence of an actual case or

controversy."); Malowney v. Fed. Collection Deposit Group, 193 F.3d 1342, 1347

(11th Cir. 1999) ("Consistent with the 'cases' and 'controversies' requirement of

Article III, the [DJA] . . . specifically provides that a declaratory judgment may be

issued only in the case of an 'actual controversy.'").

      To demonstrate an actual controversy arising under federal law, Petitioner

must allege facts showing a real and immediate dispute between the parties

justifying the resort to declaratory relief.  See Emory v. Peeler, 756 F.2d 1547, 1552

(11th Cir. 1985) ("The plaintiff must allege facts from which the continuation of the

dispute may be reasonably inferred.  Additionally, the continuing controversy may

not be conjectural, hypothetical, or contingent; it must be real and immediate, and

create a definite, rather than speculative threat of future injury.").  As the Supreme

Court explained in Maryland Casualty Co. v. Pacific Oil Co., 312 U.S. 270 (1941):

> The difference between an abstract question and a
> 'controversy' contemplated by the [DJA] is necessarily
> one of degree, and it would be difficult, if it would be
> possible, to fashion a precise test for determining in every
> case whether there is such a controversy. Basically, the
> question in each case is whether the facts alleged, under
> all circumstances, show that there is a substantial

> controversy, between parties having adverse legal
> interests, of sufficient immediacy and reality to warrant
> the issuance of a declaratory judgment.

Id. at 273.  In determining whether there exists an actual controversy arising under

federal law, the district court looks to the facts as they existed at the time the action

was filed.  See Household Bank, 320 F.3d at 1259-60.

There simply is not a sufficient allegation of an actual controversy with

respect to Respondents' potential federal RICO claim.  As the Petition

demonstrates, Respondents in the State-Court Action did not assert a federal

RICO claim, or any other federal claims.  The parties' correspondence attached to

the Petition demonstrates that Respondents refused Petitioner's demand for

arbitration of the state-law claims asserted in the State-Court Action and stated that

they intended to proceed with these claims.  (See Petition ¶¶ 45-46, Exs. D-G.)

There is no indication, and Petitioner does not even suggest, that Respondents ever

threatened to assert a federal RICO claim, or any other federal claim, against

Petitioner.  In fact, Respondents stated in Paragraph 136 of their Complaint that

they "do not assert in this action any claims under federal law and specifically and

without limitation do not assert any claims under [Section 27 of the FDIA]."  (King,

1:04-cv-02618-WSD, [1].)  The only allegation relating to Respondents' potential

federal RICO claim is Petitioner's contention that "[a]n actual controversy exists

between Respondents and [Petitioner] . . . as Respondents, based on the factual

allegations and legal theories asserted in the [State-Court Action], could file a

coercive action asserting non-frivolous federal claims against [Petitioner] . . . under

the federal RICO statute."  (Petition ¶ 3.)  This self-serving conclusion of law is

insufficient to demonstrate that a substantial controversy of "sufficient immediacy

and reality to warrant the issuance of a declaratory judgment" exists between the

parties with respect to Respondents' potential federal RICO claim.  See Maryland

Cas., 312 U.S. at 273.[9]

---

[9] Petitioner argues that Respondents' representation concerning their
intention to pursue only state-law claims against Petitioner is not relevant to
determining whether jurisdiction exists, citing Kidder, Peabody & Co. v. Maxus
Energy Corp., 925 F.2d 556 (2d Cir. 1991).  (Pet'r's Opp'n to Mot. to Dismiss at
12-14.)  Kidder does not support Petitioner's argument.  That case involved a
dispute between an investment firm ("Kidder") and a company to which it had
provided financial advice in connection with a merger ("Maxus").  Kidder, 925
F.2d at 558-59.  Maxus sent a memorandum to Kidder detailing the claims it
intended to assert against them, including a claim based on the federal securities
laws, and stated that it planned to commence litigation ten days later.  Id. at 559,
562.  Kidder filed a declaratory judgment action in the United States District Court
for the Southern District of New York, seeking a declaration that it was not liable to
Maxus under the federal securities laws.  Id. at 559.  Maxus moved to dismiss for
lack of jurisdiction, and at oral argument on its motion, represented to the court that
it did not intend to bring a federal claim against Kidder.  Id. at 560.
Notwithstanding this representation, the district court denied Maxus's motion.  Id.

Although the Court evaluates the "actual controversy" requirement based on the facts as they existed at the time the declaratory judgment action was filed, "subsequent events can reinforce the correctness of the conclusion." BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 980 (Fed. Cir. 1993).  In the year and a half since the filing of the State-Court Action, Respondents have not filed an independent federal claim against Petitioner and have not moved to amend to add a federal RICO claim to the State-Court Action or indicated they intend to do so.

––––––––––––––––––––

On appeal, the Second Circuit held that a declaratory judgment action was properly commenced in light of the real threat of litigation involving federal claims. Id. at 562.  The court also held that the declaratory judgment action was not mooted by Maxus's subsequent representations to the district court regarding its federal claims. Id. at 563.  The court stated that, absent a settlement of the federal claims or a binding, judicially enforceable agreement not to assert them, the controversy arising under federal law was still "real and immediate." Id.        Here, Respondents' representation concerning their potential federal claims against Petitioner appears in their complaint in the State-Court Action, which was filed before this declaratory judgment action.  The representation is not cited to show that an actual controversy arising under federal law has ceased to exist and that the declaratory judgment action is now moot; rather, it is cited as evidence that no such controversy ever existed.  Thus, it is properly considered by the Court in evaluating whether, at the time of the filing of this action, there existed an actual controversy between the parties with respect to Respondents' potential federal RICO claim. Accord Household Bank, 320 F.3d at 1259-60 (holding that the declaratory judgment defendants' representation to the district court at oral argument that they did not intend to file federal claims against the declaratory judgment plaintiffs did not moot the parties' controversy because the court's review was limited to the facts as they existed at the time the declaratory judgment action was filed).

These events reinforce the correctness of the Court's conclusion that there is not an actual controversy arising under federal law.  See Pro-Fac Coop., Inc. v. Alpha Nursery, Inc., 205 F. Supp. 2d 90, 102 (W.D.N.Y. 2002) (finding subsequent events reinforced court's conclusion that no actual controversy under federal law existed, citing that the declaratory judgment defendants' subsequent class action against the declaratory judgment plaintiffs included only claims under state law).

Petitioner does not contend that there is an actual controversy with respect to Respondents' potential federal RICO claim.  (See Pet'r's Opp'n to Mot. to Dismiss at 21-22.)  Indeed, the record in this case and the litigation that has been conducted demonstrates that the actual controversy in this case is whether the state-law claims asserted in the State-Court Action will be resolved through individual arbitration or through class-action litigation in state court.  The State-Court Action was removed, and the declaratory judgment action was filed, only because Respondents refused Petitioner's arbitration demand.  (See Petition ¶¶ 45-46, Ex. D-6).  Apparently recognizing that the parties' dispute concerning the arbitrability of Respondents' state-law claims was not sufficient to confer federal-question jurisdiction under the FAA or DJA, Petitioner attempts to manufacture federal jurisdiction in this case by arguing that the state-law claims asserted in the

State-Court Action (which now have been pending for over thirty (30) months) could have included a federal RICO claim, and that this potential federal RICO claim confers jurisdiction under the rationale set forth in <u>Household Bank</u>.  In essence, Petitioner seeks to create the illusion of jurisdiction using the smoke of Respondents' potential federal RICO claim and the mirror of <u>Household Bank</u>.

Petitioner argues that, after <u>Household Bank</u>, the plaintiff in a declaratory judgment action is not required to demonstrate that there is an actual controversy arising under federal law to remain in federal court.  (<u>See</u> Pet'r's Opp'n to Mot. to Dismiss at 21-22.)  Instead, according to Petitioner, the plaintiff need only show that there is an actual controversy between the parties, even a purely state-law controversy, and then show that, based on the circumstances giving rise to the underlying dispute, the declaratory judgment defendant could assert a federal claim against the plaintiff.  (<u>See</u> <u>id.</u>)

Petitioner's characterization of <u>Household Bank</u> is unpersuasive.  In that case, the Eleventh Circuit considered whether a district court had subject-matter jurisdiction over a declaratory judgment action where the declaratory judgment defendants threatened both federal and state-law claims.  <u>Household Bank</u>, 320 F.3d at 1251.  The parties in <u>Household Bank</u> conceded, however, that there was

"an actual controversy between them arising under federal law," presumably because it was undisputed that counsel for the declaratory judgment defendants had threatened to file both federal and state-law claims against the declaratory judgment plaintiffs.  See id. at 1253.  The court was not requested or required to address whether there must also be an actual controversy with respect to the federal claim which purports to confer federal-question jurisdiction.

Having reviewed the DJA, as well as Household Bank and the other circuit-court opinions cited therein, the Court concludes that where a plaintiff in a declaratory judgment action relies on the declaratory judgment defendant's potential federal claim as the basis of federal-question jurisdiction, the plaintiff also must establish that an actual controversy exists with respect to that federal claim.  This conclusion is supported by the plain language of the DJA, which states that a declaratory judgment is appropriate only where there exists an "actual controversy *within [the district court's] jurisdiction*."  See 28 U.S.C. § 2201(a) (emphasis added).  Although the Court is unaware of any Eleventh Circuit authority directly addressing this issue, the court in Household Bank indicated that an actual controversy with respect to the declaratory judgment defendant's potential federal claim is required.  It stated that the DJA "requires that the plaintiff allege facts

-20-

showing that the controversy is within the court's original jurisdiction," <u>Household Bank</u>, 320 F.3d at 1253, and characterized the question before the court as "whether the district court erred in dismissing this declaratory judgment action for lack of subject-matter jurisdiction, *notwithstanding the existence of an actual controversy between the parties regarding non-frivolous federal claims* that could be brought by the defendants in a coercive action." <u>Id.</u> at 1251 (emphasis added). The requirement of an actual controversy of a threatened claim is practically necessary when seeking to involve a federal court's limited  jurisdiction.  It assures federal jurisdiction is exercised only where the dispute is real.

The other circuit-court cases discussed by the Eleventh Circuit in <u>Household Bank</u> confirm that a party relying on federal-question jurisdiction must demonstrate that an actual controversy exists with respect to the declaratory judgment defendant's potential federal claim.  <u>See</u> <u>Fina Oil & Chem. Co. v. Ewen</u>, 123 F.3d 1466, 1470 (Fed. Cir. 1997) ("[A] declaratory judgment action affords a measure of relief to a party who is *under the shadow of threatened litigation arising under federal law*. . . . We determine whether there is jurisdiction in a declaratory judgment action by applying the well-pleaded complaint rule.  We apply that rule not to the declaratory judgment complaint but to the hypothetical action the

declaratory defendant *would* have brought.") (emphasis added); <u>GNB Battery Techs., Inc. v. Gould, Inc.</u>, 65 F.3d 615, 620 (7th Cir. 1995) ("Looking only to the complaint, we must assure ourselves that *the possibility of a suit under [federal law]* is sufficiently real and immediate.  In making this judgment, we must evaluate the complaint as a whole and assess the totality of the circumstances.") (emphasis added); <u>AmSouth Bank v. Dale</u>, 386 F.3d 763, 775 (6th Cir. 2004) (holding that to determine whether the district court has jurisdiction over a declaratory judgment action, the proper inquiry is "whether the declaratory plaintiff *'could reasonably have anticipated' a federal cause of action* from the conduct of the other party" and that, "[u]nder that formulation, the appropriate place to look is the correspondence and conversations between the [parties].") (citing <u>PHC, Inc. v. Pioneer Healthcare, Inc.</u>, 75 F.3d 75, 78-79 (1st Cir. 1996)) (emphasis added); <u>Kidder</u>, 925 F.2d at 562 (holding that a declaratory judgment action was properly commenced in light of the real threat of litigation involving claims under federal securities laws).

Finally, numerous district court decisions addressing the issue of jurisdiction under the DJA support the conclusion reached here.  <u>See, e.g.</u>, <u>Bell v. Ill. Cent. R.R. Co.</u>, 236 F. Supp. 2d 882, 894 (N.D. Ill. 2001) (dismissing declaratory

judgment action for lack of jurisdiction where the declaratory judgment defendants had not claimed that the declaratory judgment plaintiff failed to comply with federal law or that it was liable to the declaratory judgment defendant for failure to do so: "In other words, no actual controversy exists regarding whether [the declaratory judgment plaintiff] complied with federal law."); Pro-Fac Coop., 205 F. Supp. 2d at 100-02 (holding that the declaratory judgment plaintiffs failed to demonstrate an actual controversy arising under federal law because the declaratory judgment defendants' class-action demand letter and demand for documents were made pursuant to Oregon law, not federal law, and did not indicate any intention to commence a federal lawsuit); Data Exch. Sys., LLC v. MetroList Servs., Inc., No. C05-2327, 2005 WL 2077482, *6 (N.D. Cal. Aug. 26, 2005) (dismissing declaratory judgment action for lack of jurisdiction where all of the claims asserted by the declaratory judgment defendant in its previously filed state-court action were state-law claims: "While there is plainly a controversy between [the declaratory judgment defendant] and [the declaratory judgment plaintiff], the controversy does not involve a federal copyright claim, and [the declaratory judgment plaintiff] has neither established the existence of an actual controversy involving the federal copyright law, nor shown that it had a real and reasonable apprehension that it

would be subject to liability under the Copyright Act."); <u>N. Cent. F.S., Inc. v.</u>

<u>Brown</u>, 951 F. Supp. 1383, 1397 (N.D. Iowa 1996) (holding that district court

lacked jurisdiction over claims for declaratory relief where parties sought

declaration that contracts were legal or illegal under the Commodities Exchange Act

("CEA"), but the pleadings did not demonstrate that the claims threatened by the

declaratory judgment defendant were federal claims:  "[T]he threatened or actual

action prompting the purely declaratory claim here is a state-law breach-of-contract

suit to which the assertedly federal issue of the illegality of the [contracts] under the

CEA is an affirmative defense.").[10]

---

[10]  Petitioner did not refer the Court to any authority applying the "actual controversy" element in the manner they propose, either before or after <u>Household Bank</u>.  The Court's research found only one such case:  <u>Cardtoons, L.C. v. Major League Baseball Players Ass'n</u>, 95 F.3d 959 (10th Cir. 1996).  In <u>Cardtoons</u>, the Tenth Circuit held that the district court had jurisdiction over a declaratory judgment action even though the declaratory judgment defendant ("MLBPA") never explicitly threatened to assert federal-law claims against the declaratory judgment plaintiff ("Cardtoons").  <u>Id.</u> at 966. The court appeared to indicate that the actual-controversy and federal-question inquiries were separate and distinct:

> MLBPA argues that Cardtoons could not have
> reasonably feared a *federal* claim because MLBPA never
> explicitly threatened to bring a Lanham Act claim.  As
> discussed above, whether MLBPA's potential suit could
> contain a federal claim is pivotal to our federal question
> jurisdiction.  Whether MLBPA threatened to bring a

Because Petitioner fails to demonstrate an actual controversy with respect to Respondents' potential federal RICO claim -- its alleged basis for federal-question jurisdiction in this Court -- the Court lacks jurisdiction over this declaratory judgment action.

### B.     Abstention Under the Declaratory Judgment Act

Even if the Court had jurisdiction over this action under the DJA, this action still would be dismissed.  The DJA confers on district courts broad discretion to stay or dismiss a declaratory judgment action over which it has jurisdiction:

> By the [DJA], Congress sought to place a remedial arrow
> in the district court's quiver; it created an opportunity,
> rather than a duty, to grant a new form of relief to
> qualifying litigants.  Consistent with the nonobligatory
> nature of the remedy, a district court is authorized, in the

---

> federal claim, however, is immaterial to the controversy
> requirement, which is satisfied so long as MLBPA's
> conduct created a reasonable apprehension on the part of
> Cardtoons of the imminence of suit, with state or federal
> claims, upon publication.

Id.  The court cited no authority for this bifurcation of the actual-controversy and federal-question inquiries, and did not rely on this statement in reaching its opinion: "In any event, Cardtoons was reasonably apprehensive of a suit containing a federal claim given MLBPA's threat of pursuing its '*full* legal remedies' and its previous use of the Lanham Act in similar cases."  Id. Accordingly, the Court finds that Cardtoons is not persuasive on this issue.

> sound exercise of its discretion, to stay or to dismiss an
> action seeking a declaratory judgment before trial or after
> all arguments have drawn to a close.

Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995) ("In the declaratory judgment

context, the normal principle that federal courts should adjudicate claims within

their jurisdiction yields to considerations of practicality and wise judicial

administration.")  Where there is a parallel state-court proceeding which will resolve

the issues presented by the declaratory judgment action, the district court typically

should abstain from hearing the declaratory judgment action under Wilton.  See

Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330-31 (11th Cir. 2005)

(stating that district courts have "substantial latitude in deciding whether to stay or

dismiss a declaratory judgment suit in light of pending state proceedings"); Cormier

v. Green, 141 Fed. Appx. 808, 815 (11th Cir. 2005) ("Factors to be considered in

determining whether to exercise this discretion include the scope of the pending

state proceeding, . . . [and] whether the claims of all parties in interests can be

adjudicated in the proceeding . . . .") (citing Wilton, 515 U.S. at 283)[11]; Brillhart v.

---

[11]  Cormier is an unpublished decision and, in accordance with 11th Circuit
Rule 36-2, is not considered binding precedent.  11th Cir. R. 36-2 ("Unpublished
opinions are not considered binding precedent.").  It is cited for its persuasive
value only.

Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942) ("[I]t would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."); Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1366-67 (9th Cir. 1991) ("[W]hen a party requests declaratory relief in federal court and a suit is
pending in state court presenting the same state law issues, there exists a presumption that the entire suit should be heard in state court.").

Abstention also is appropriate under Wilton where it appears the declaratory judgment action was filed in response to a state-court action or as an attempt to obtain a federal forum where removal is not possible.  See Cormier, 141 Fed. Appx. at 815 (holding that a district court should decline to entertain a declaratory judgment action "where the declaratory remedy is being used merely for the purpose of 'procedural fencing' -- that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable . . . ."); Govt. Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998) (The district court . . . should discourage litigants from filing declaratory actions as a means of forum shopping . . . ."); Chamberlain, 931 F.2d at 1367 ("[F]ederal

courts should generally decline to entertain reactive declaratory actions."). <u>See generally</u> <u>Commercial Metals Co. v. Balfour, Guthrie, & Co., Ltd.</u>, 577 F.2d 264, 269 (5th Cir. 1978) ("The [DJA] . . . was not intended to be used as a contrivance to create jurisdiction which does not otherwise exist.")[12].

The factors set out in <u>Wilton</u> counsel in favor of abstention in this declaratory judgment action.  First, there is a parallel state-court proceeding which will resolve the issues presented by this declaratory judgment action.  The declaratory relief sought by Petitioner in this action is a declaration of the enforceability of the Arbitration Provisions.  The enforceability of the Arbitration Provisions is before the Cobb County State Court in the State-Court Action on Petitioner's motion to compel arbitration.  Second, it is clear that this action was filed in response to the State-Court Action and as a back-up method for obtaining a federal forum if the Court found it did not have jurisdiction over the State-Court Action on removal.  Indeed, Petitioner concedes that it sought to have the arbitrability issue resolved by a federal instead of state court because of the

---

[12] In <u>Bonner v. City of Prichard, Alabama</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

procedural advantages of a federal forum.  (Pet'r's Opp'n to Mot. to Dismiss at 24-25.)  Considering these factors, as well as the other factors set out in Wilton, the Court finds that, even if it had jurisdiction over this action under the DJA, it would exercise its discretion to dismiss this action in favor of the State-Court Action.

      The Court recognizes that where a plaintiff seeks coercive relief in addition to declaratory relief under the DJA, courts have applied the more stringent test for abstention articulated in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976).  See, e.g., Mega Life & Health Ins. Co. v. Tordion, 399 F. Supp. 2d 1366, 1369-70 (S.D. Fla. 2005) ("The [DJA] . . . gives a federal court broad discretion in deciding whether to exercise jurisdiction over a case when there is a parallel state court case.  . . . A federal court does not have such broad discretion, however, when a plaintiff seeks coercive relief . . . in addition to a declaration under the [DJA].").  Here, in addition to declaratory relief under the DJA, Petitioner asserts claims under the FAA to compel arbitration and enjoin the State-Court Action.  (Petition ¶¶ 55-68)  Even assuming the presence of Petitioner's FAA claims generally would mandate the application of the Colorado

River test,[13] the Wilton test still applies here case because the Court declines to exercise supplemental jurisdiction over these claims.

Petitioner does not assert that there is an independent basis for jurisdiction over its claims under the FAA.  (See Pet'r's Opp'n to Mot. to Dismiss at 14-15.) Nor could it.  "Section 4 [of the FAA] provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue."  Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1469 (11th Cir. 1997); Discover Bank v. Vaden, 396 F.3d 366, 373 (4th Cir. 2005) ("A federal court may therefore hear a § 4 petition to compel arbitration if, but for the arbitration agreement, subject matter jurisdiction over the case would otherwise exist by virtue of a properly invoked federal question in the underlying dispute."); Tamiami Partners Ltd. ex rel. Tamiami

---

[13] It is uncertain whether Colorado River or Wilton applies where there is jurisdiction under the DJA, but no independent basis for the plaintiff's claim for coercive relief, such as diversity or federal-question jurisdiction.  In Mega Life, for example, the plaintiff's claims for coercive relief were supported by diversity jurisdiction and were independent of its claim for declaratory relief.  399 F. Supp. 2d at 1369.  Under these circumstances, it was clear that Colorado River applied to the defendant's request that the Court abstain from hearing the case.  Here, there is no independent basis of jurisdiction over Petitioner's claims under the FAA.

-30-

Dev. Corp. v. Miccosukee Tribe of Indians of Fla., 177 F.3d 1212, 1223 n.11 (11th Cir. 1999) (holding that a federal court assessing jurisdiction under the FAA should "look through" the petition to the underlying dispute between the parties to determine whether there is a federal question). The requirements for diversity jurisdiction are not satisfied here, and, as set out in Section II(A), supra, the State-Court Action implicates state law, not federal law. And although Petitioner alleges Respondents could assert a non-frivolous federal RICO claim against it, Petitioner does not cite, and the Court is not aware of, any authority demonstrating that the Court has jurisdiction under Section 4 of the FAA on the basis of a potential federal claim that has not been invoked by Respondents in the underlying State-Court Action.[14]

Petitioner's claims under the FAA are before the Court, if at all, on supplemental jurisdiction. While the supplemental jurisdiction argument is thin at

---

[14] Petitioner does not argue that the alleged complete preemption of Section 27 of the FDIA provides federal-question jurisdiction for its claims under the FAA. Even if it did, this argument is without merit. See Note 5, supra. Cf. Rio Grande Underwriters, Inc. v. Pitts Farms, Inc., 276 F.3d 683, 685-87 (5th Cir. 2001) (dismissing petition to compel arbitration under the FAA for lack of jurisdiction, finding no federal question because Federal Crop Insurance Act, 7 U.S.C. § 1501 et seq., did not completely preempt state-law claims asserted by the respondent in the underlying state-court action).

best, assuming supplemental jurisdiction could be asserted, the Court would
decline its exercise.  Section 1367(c) provides that district courts may decline to
exercise supplemental jurisdiction over a claim if "(1) the claim raises a novel or
complex issue of State law, (2) the claim substantially predominates over the claim
or claims over which the district court has original jurisdiction, (3) the district court
has dismissed all claims over which it has original jurisdiction, or (4) in exceptional
circumstances, there are other compelling reasons for declining jurisdiction."  28
U.S.C. § 1367(c); Cf. Kidder, 925 F.2d at 563 (declining to exercise supplemental
jurisdiction over the plaintiff's claims for declaratory relief with respect to state-law
controversies where the court already had resolved the plaintiff's claims for
declaratory relief with respect to federal-law controversies over which it had original
jurisdiction).  Petitioner's request for an order compelling arbitration of
Respondents' state-law claims and enjoining the State-Court Action substantially
predominate over its request for a declaratory judgment with respect to
Respondents' hypothetical federal RICO claim.  In addition, the reactive nature of
Petitioner's declaratory judgment action, as well as the procedural posture of the
respective cases, constitute compelling reasons for declining to exercise
supplemental jurisdiction over Petitioner's claims under the FAA.  Accordingly, the

Court declines to exercise supplemental jurisdiction over these claims, and they are dismissed.  Further, under <u>Wilton</u>, Court declines to entertain Petitioner's claim under the DJA -- its only remaining claim in the case -- even assuming jurisdiction over such claim exists.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Respondents' Motion to Dismiss for Lack of Subject Matter Jurisdiction [2] is **GRANTED**.  This case is **DISMISSED** and the Clerk of Court is **DIRECTED** to close this matter.

**SO ORDERED**, this 7th day of February, 2006.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE